Dear Executive Director Hare,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
 In calculating how much of each wager is to be retained to pay purses for participating horses when a licensed racetrack (also called an organization licensee), pursuant to the provisions of 3A O.S. Supp. 1996, § 205.6a[3A-205.6a] and other applicable statutes, receives a simulcast race from another racetrack and transmits that simulcast signal to one or more of its off-track wagering facilities, are wagers accepted at the racetrack to be combined with wagers accepted at the off-track wagering facilities, or are the wagers at the racetrack to be calculated separately from the wagers at off-track wagering facilities?
¶ 1 Under the provisions of 3A O.S.Supp. 1996, § 205.6a[3A-205.6a], a licensed racetrack, also called an organization licensee, is permitted to accept wagers on the organization licensee's racing programs (both live races and simulcast races) at facilities located outside of the racetrack's racing enclosure:
 Any organization licensee shall file with the Oklahoma Horse Racing Commission its plan to conduct pari-mutuel wagering at a facility or facilities located outside the organization licensee's racing enclosure. Such pari-mutuel wagering may be conducted at any time as authorized by the Commission.
3A O.S. Supp. 1996, 205.6a(A) (emphasis added).
¶ 2 Section 205.6a imposes several conditions on authorized off-track wagering. One of those conditions is that the funds retained by the organization licensee and distributed by the licensee to the Oklahoma Tax Commission, to purses for participating horses, and to the racetrack itself are to be distributed both in accordance with existing law, and in accordance with a new subsection of Section 205.6a. First, at 3AO.S. Supp. 1996, § 205.6a[3A-205.6a](A)(4), the organization licensee is instructed to distribute the retained funds in the same manner as set forth in existing provisions in the Oklahoma Race Horse Racing Act:
 The organization licensee sending its racing signal to a facility or facilities outside its racing enclosure may combine the pari-mutuel pools of all facilities with those of the organization licensee for the purpose of determining odds and computing payoffs. The amount of money to be retained and distributed by the organization licensee and to be remitted to the Oklahoma Tax Commission from money wagered pursuant to the provisions of this section shall be the same as set forth in paragraph 1 of subsection B, in subsection D, and in subsection E of Section 205.6 of this title and in Section 208.2 of this title[.]
3A O.S. Supp. 1996, § 205.6a[3A-205.6a](A)(4) (emphasis added).
¶ 3 The first provision of existing law referred to is Section 205.6; it provides for the distribution of retained funds in all races, except races conducted under Section 208.2 of Title 3A, which specifically provides for the distribution of retained funds for races held by various fair associations, commonly called fair meets.
¶ 4 The non-fair meet distribution under 3A O.S. Supp. 1996, §205.6[3A-205.6](B)(1)(c), provides that one-third of eighteen percent (18%) of each wager — six percent (6%) — is to be distributed as purses for participating horses. Additionally, under subsection D of Section 205.6, seventy-five percent (75%) of an additional two percent (2%) withheld on "all money wagered on multiple race wagers involving not to exceed three races and on multiple horse wagers in the same race," is also to be distributed "as purses for participating horses."
¶ 5 Similarly, under the fair meet distribution formula of 3AO.S. Supp. 1996, § 208.2[3A-208.2](B), one-third (1/3) of the eighteen percent (18%) — six percent (6%) — held on all win, place and show wagers is to be distributed "to purses for participating horses," and slightly higher percentages are to be so distributed on more exotic wagers. The purse distributions discussed above are those required under existing statutes — Sections 205.6(B) and 208.2(B) — the existing statutes specifically referred to in3A O.S. Supp. 1996, § 205.6a[3A-205.6a].
¶ 6 Section 205.6a(A) at subsection 6, however, requires a different distribution of purses from wagers accepted at off-track facilities:
The distribution for purses at facilities other than anorganization licensee's racing enclosures shall be:
 a. six and one-half percent (6.5%) of total handle during the first thirty-six (36) months after the opening of a facility in a county, and
 b. seven and one-half percent (7.5%) of total handle thereafter.
3A O.S. Supp. 1996, § 205.6a[3A-205.6a](A)(6) (emphasis added).
¶ 7 This off-track purse distribution formula is different from the purse distribution formulas made under either Section 205.6 or 208.2. Accordingly, a licensed racetrack, in calculating the purses to be distributed, may not combine both the off-track and on-track wagers, because different mathematical formulas must be applied to wagers accepted at these different locations in order to determine the proper distribution to be made to the purses for participating horses.
¶ 8 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Under the provisions of 3A O.S. Supp. 1996, § 205.6a[3A-205.6a], when a licensed racetrack receives a simulcast race from another racetrack and transmits that simulcast signal to one or more of its off-track wagering facilities, the racetrack, in calculating the amounts to be distributed as purses to participating horses, must treat wagers accepted at the racetrack separately from those accepted at off-track wagering facilities, because the percentage of the wagers accepted at off-track facilities to be paid to purses for participating horses is different from the amount to be paid from wagers accepted at the racetrack's racing enclosure.
W.A. DREW EDMONDSON ATTORNEY GENERAL
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL